Hear ye, hear ye. This Honorable Public Court of the 2nd Judicial District is now back in session. The Honorable Mary S. Shasta will present. Good morning. Good afternoon. You can be seated. Thank you. Your Honor, the final case on the docket today is 2-1-2-0-4-0-3. Carl Kahn, Plaintiff's Appellant. The Laura Lee McElroy, Employee's Appellant. The defendant's appellant. Arguing on behalf of the appellant is Megan E. Pressman. Arguing on behalf of the appellant is Mr. Daniel J. McCray. Ms. Pressman, are you ready to proceed? I am. We are, Your Honor. You may approach. Do you want to pull the mic down? Yes, I was wondering about that. Thank you. That's all right. Your Honors, thank you for being here today. Thank you for hearing argument on this matter. This case has kind of been rolling around the courts for a long time. We have a sale of a home that goes back several years. The home is located in Yorkville. There has been a dispute between the parties since then about the condition of the home immediately following my client taking possession and moving into the home. This case went to trial a couple of years ago at this point in Kendall County. The claims at issue at trial were a claim under the Real Estate Residential Disclosure Act, a claim for common law fraud, fraudulent concealment, and count for negligent misrepresentation. Prior to proceeding to trial, there had been a motion for summary judgment that was filed by defendants. That motion was denied by the court. Then we went to trial, largely on the same issues that were pending in the motion for summary judgment. Following the close of Plaintiff's case, the judge found that while there was evidence to support the position that there was mold existing in the home at the time that the Real Estate Disclosure Report was executed and at the time of closing, there was not evidence to support that the defendants were aware of the mold at those times. Our position is that that finding was incorrect. There was evidence to support, at least circumstantially, that the defendants were aware that the mold existed, including that they had lived in the home for approximately 17 years. What was that evidence? There was prior leaks in the home, including in the room where the mold was found, the back bedroom. There was evidence that they had lived in the home for approximately 17 years, that my client's mother, who stayed in the home the first night that they were living there, after the closing occurred, who slept in the bedroom where the mold was found, immediately smelled mold and told my client, Mr. Hahn, that she smelled something stinky. And within a couple of days, he pulled up carpet and opened up one of the walls and found extensive mold in the home. The home inspector did not notice the mold or the odor, right? That is correct. The home inspector did not notice mold. And Mr. McElroy is a senior citizen and disabled, correct? That is correct. He had not been down the basement or into the crawl space in some time? Not in the crawl space. The odor from the mold, though, was located in one of the bedrooms in the home. And there was no evidence presented that Ms. McElroy was disabled in any way and unable to access different portions of the home. Was there evidence that they could smell the mold? They denied being able to smell the mold. And your client didn't smell the mold either? Correct. So the only possible indicator that they knew that there was mold and it was a defect that they should have disclosed was the fact that somebody else smelled it? That somebody else smelled it and how extensive it was. And the representative from Advancing Clean who did the mold remediation testified that he believed people living in the home would have noticed the mold. I think he said it had to have been there for at least six months to a year. Right. And the trial court did agree there was evidence that it existed at the time. That's obviously relevant to the first three counts of the complaint, whether the defendants actually knew about the existence of the mold. As to count four, which was for negligent mass representation, the standard is somewhat different. Here we have evidence that Ms. McElroy testified that she was aware that a buyer of a home would be concerned about leaks and that she was required to disclose such information if she had it to a buyer. And our position is that that then gave rise to an obligation to check and look and make sure that there was no damage from the prior leaks in the home. I think the bigger portion of this... Did they disclose the prior leaks? No. Well, the main portion of the case is obviously about the claims the plaintiff brought. I think kind of the more legally quirky part of this case was about the attorney's fees issue. It's certainly a part of the case that the attorneys spent a long time arguing about. The petition for attorney's fees, on the original hearing on the petition for attorney's fees, the trial court found that a standard akin to the 137 sanctions standard should apply for a petition for fees under the statute. That is based on various cases that have interpreted that statute to say if a defendant is bringing a request for attorney's fees under the statute, that there should be an analysis of whether a plaintiff brought the claim in bad faith or whether a deterrence needs to apply to keep other plaintiffs from such action. And the relative merits of the positions of the parties to the case. When applying that standard initially, the court found that the plaintiff acted in good faith in initially bringing the claim, but that the plaintiff should not have brought the claim to trial. Our position is that there was an opportunity for the court to have made that determination before the case went to trial because the defendants brought a motion for summary judgment in which they argued essentially the same things as they argued on the motion for directed finding. Once the court determined that there was evidence to proceed to trial, plaintiff, I think, was entitled to bring their case to trial. What about the contractual right to attorney's fees? Sure. So that was a matter that came up on defendant's motion for reconsideration, whether the contract between the parties required the court to award all of their attorney's fees as the prevailing party under the contract. And the court agreed with that argument. We disagree with that position for several reasons. First, there's a handful of cases that discuss this issue. I've been able to find one that is precisely on point where defendants, where the successful party following a sale and brought claims for, under the statute and under the common law, but not under the contract itself. Every case I think that we have found, both parties have found on this matter, are cases in which the parties brought claims that included some type of contractual relief, including a couple where the plaintiff brought claims for rescission as well as for fraud and under the Disclosure Act. Our position is that the Disclosure Act conflicts with the terms of the contract because the Disclosure Act, which is intended to encourage parties to be able to redress  should encourage buyers to be able to pursue remedies under the Act. That's why there is this discretionary standard where attorneys' fees should not be awarded to defendants unless there was some bad faith on plaintiff's part to bring a claim. The contract, which plaintiff did not bring a claim under the contract itself, is a mandatory fee-shifting provision, using the word shall rather than may. Our position is that the contract is in conflict with the claims that plaintiff chose to bring, and our position is also that the harm arose before the contract was even signed because the disclosure report was ex—I'm sorry. Go ahead. You can finish that thought. The disclosures were made prior to the time that the parties entered into and ultimately closed under the contract. What's the purpose of the disclosure? The purpose of the disclosure is to notify the buyers of any potential defects that may exist in the house that may preclude the buyer from desiring to proceed with the sale of the home. And in the complaint, the contract is referred to, or the disclosure form is referred to, as well as the contract. And the statutory disclosures are part of the contract prior to that time. Your Honor, I was just— Doesn't that mean that the disclosure provision is incorporated into the contract? I think the disclosure provision is really a separate beast from the contract because it's required by the statute itself. What about the language in the statute—I'm sorry, in the contract with respect to the contract? So attorney's fees are for an action with respect to the contract. It doesn't say for, you know, default. It doesn't say for a breach of contract. With respect to seems to be very broad language. What's your position on that? I agree the language is broad. I think the distinction here is that the misrepresentation occurred prior to the time that the parties entered into the contract. In other words, but for the misrepresentation, there would have been no contract between the parties. So there is a case from 2004 in the Fourth District, Erwin Bush v. Largent, that indicates that though not an action on the contract, an action for fraud in the inducement is an action with respect to the contract. And that involved a termite case, and it was very similar in many respects. Are you familiar with that case? I actually just saw that case, Your Honor, and I have a couple of positions on that one as well. Go ahead. I think primarily the plaintiff in that case did bring claims under the contract itself. They brought a claim for rescission. Secondarily, while the plaintiff initially brought a statutory claim under the Fraudulent Disclosure Act, the court ruled that that claim was time-barred. So the plaintiff did not have the opportunity to proceed on the claim under the statute as we did here. And thirdly, I would simply point out that I have not found another similar case that ruled in the same manner. And as I said, I have not found a case that indicates that where a plaintiff does not bring any contractual claims at all, the defendant would be entitled to attorney's fees where a claim was brought under the statute. All right. Go ahead. So our position is that the courts should have let the case at trial proceed. Defendants should have presented their case and then had a full ruling on the case at the close of all evidence. I think the court erred in finding that there was no evidence that the defendants were aware that the leak and the mold existed at the time of the misrepresentation. And then our position on attorney's fees is that there was no bad faith in proceeding with the case to trial. The court agreed that there was at least some evidence to support some of the claims and had allowed the case to proceed following summary judgment. So attorney's fees were not appropriate, certainly under the Act. And our position is that because the claim was brought under the Act in common law, rather than for any type of contractual claim, that it's inappropriate to award any attorney's fees under the contract. Any questions? Any further? Thank you so much. You'll have your opportunity for rebuttal. Thank you. Sure. Mr. Crane. Thank you, Your Honor. It's a pleasure to be back up here. I think the easiest one to dispose of first is the argument in regard to Count 4 about the negligent misrepresentation. There is a case specifically on point that we cite in our brief, Zimmerman v. Northfield Real Estate, and it's specifically held that an action for negligent misrepresentation will not lie against the seller under the Illinois Responsible Party Transfer Act. So I believe that disposes totally of that issue and it's not been an overruled case. In regard to the first two actions, the one for Count 1 on the violation of the statute, the statutory disclosure, and Count 2 on fraud, the facts in this case were not in disagreement between the parties. There were no conversations ever between plaintiff and defendants before the closing, other than the morning of the closing where Mrs. McElroy happened to run into the plaintiff at the house and he asked if he could drop and leave some fish there prior to closing. Very pleasant discussion. No discussion about... Dropping and leave fish there? Right. No discussion about defects whatsoever. There was no... How about the disclosure? Did anybody say there was leaking? They did not, but again, under the Disclosure Act, if an item has been repaired, and in good faith they believe it's been repaired, which was done several years before the closing, we do not believe there was a duty to disclose that, and it was in fact repaired. In regard to Count 1, the count has to be totally based on the contract. There were no conversations, as I mentioned, between the parties. There were no conversations, emails, correspondence between the realtors. So the only representations that are involved in this case are under the residential disclosure that was tendered. There was nothing else. So to argue that the claim is not brought in respect to the contract, we disagree. It had to be brought in respect to the contract, and under Illinois law, that disclosure must not may be attached to the 7.0 contract that's used everywhere from I-80 north to Wisconsin, Iowa, and Indiana and Illinois. So we believe the language of paragraph 28 of the contract, specifically as Justice Kennedy recited, is an action with respect to the contract. And the case that Justice Kennedy just cited, Erlin Bush v. Largent, was cited with approval by a federal district court that came down after we filed the briefs in this case. We asked to include it in our briefs, and the order was entered saying, no additional supplemental briefs, but we reserve the right as a court to consider the cases. So the case of Lobato v. O'Connor from the northern district specifically cites the Erlin Bush case as support and specifically holds that though a similar paragraph to 28 here was involved, though not an action on the contract, an action for fraud is an action with respect to the contract. So we do think both of those cases support our position that this was based on contract. Did that case award fees for which side? For the prevailing party on the fraud and inducement. Right. Was the prevailing party the defendant or the plaintiff? It would have been the plaintiff rather than the defendant. Are there any cases in support of an award for effectively a not guilty or directed? There is, Judge. The fourth district seemed to be the hotbed of appellate courts, seemed to be the hotbed of these appellate cases. There's three of them down there. And one of the three that we cite in our brief specifically states that a seller or defendant may recover attorney's fees based on the fee shifting provision. Again, this court in a previous case of Franklin v. Nanavito out of DuPage County followed what we argued as to paragraph 28 of the contract, that the prevailing view in Illinois is that the word shall, and that's the word used in paragraph 28, is interpreted as must, whereas under the Act, which is in derogation of the common law, and I have no truck or quarrel with it, it's totally different. It says that the prevailing party may, in the discretion of the judge, be awarded attorney's fees. And those three fourth district cases have adopted this four element syllogy that basically says to award attorney's fees to a prevailing party, you've got to show some misconduct. However, that's not the law as to the fee shifting under paragraph 8 of 7.0. And that's why Judge Krentz in Kendall County granted our motion for rehearing and awarded the full amount of our fees. What is your position, and your poem brings up a good point. You know, there's a motion, was it motion for summary judgment, and the court denies it, and then you go to bench trial and the court grants the motion for directed finding at the close of the plaintiff's case. Could he not have granted it at summary judgment? Well, again, I think he should have, but I could argue one side, I'm not sitting with the courts. How is that bad faith? Well, it's not bad faith, and I don't think bad faith is required under the contractual fee shifting, Your Honor, under paragraph 28. I do think it's applicable under a claim in derogation of common law under the statute. And again, when we argued my motion to reconsider, I said, Judge Krentz, I agree totally with what you did on the statutory claim, but in your findings you state that you used the same logic on paragraph 28, that there had to be a finding of some misconduct about the non-prevailing party. And frankly, he said, I was wrong. When I look back at the cases you cited, there doesn't have to be any misconduct in part non-prevailing under the contractual fee shifting. Now, I agree with counsel. The trial judge had the discretion of whether or not to award all of what we asked or part of what we asked, but he also specifically found in both of his orders that the time spent was reasonable considering the case, and he also found the $300 hourly was reasonable in Kendall County for somebody with 47 years of experience. So there was no quarrel about the dollar amount. It was the quarrel about whether it should be awarded or not awarded with a bad faith act by the plaintiff. Just a quick question about the directed verdict itself. Sure. So the evidence proffered by the plaintiff here is circumstantial. In other words, the smell was there. There were prior issues that were repaired. There was carpet that was newer, maybe not new, that covered stains. There was a dryer vent that vented into the space that had been removed. So why aren't those at least facts that would go to the trial or fact at the end of the case rather than directing it out? Well, I think the first part about the carpet, that was plaintiff's whole house of cards. The carpet looked newer to the plaintiff. He had no scintillant evidence otherwise about the carpet. He didn't go to neighbors or prefer any evidence that, gee, at some point we saw his neighbors, those 17-year-old homeowners, had wet carpeting out in the garbage or that we saw a carpeting truck come in and totally redo their house. He had no evidence that anybody – this was tacked-down carpeting. It wasn't a throw rug. So the defendants had no knowledge that there was anything under the carpet. The mold that was ultimately found, or mold-like substance, was behind drywall. In other words, it wasn't visible not only to the defendants who lived there 17 years. It was not visible to the home inspector who spent a couple hours going through the house and going down in the basement. Frankly, his extensive home report, and it was part of the record, checked there was no problem with concrete. He looked underneath on the rafters in the crawl space. There was no black material of any kind. A very veteran home inspector couldn't find anything even. Now, admittedly, with Mr. McElroy being disabled in the wheelchair, the last time he was in that basement was five years before the closing, and he personally replaced the sump pump. But, again, that Disclosure Act being in derogation of common law specifically provides that a homeowner does not have to undertake any inspection. The one comment made a couple times in the brief and by counsel briefly, Mrs. McElroy is a realtor, absolutely no question. But the Act doesn't make any distinction between me as a lawyer, you as justice's appellate court, or a realtor having any separate special knowledge or duty or obligations under that disclosure report. We're all reporting it as a citizen seller of what's within our actual knowledge, and they had absolutely no knowledge and wouldn't have continued to live there, particularly with Mr. McElroy's heart disabilities for 17 years if they knew there was a problem. Kind of a showstopper for me when I analyzed the case talking to my clients, and I did not handle the real estate transaction at all, was that McElroy's explained to me, and it's part of the record, that they bought that newer type vinyl flooring to replace the 17-year-old carpet in the room, and then Mr. McElroy had his health issues. It never happened. So they left that material in the garage for the plaintiff to use, and it defies human knowledge or inference from circumstantial evidence that he would leave material for somebody to replace the flooring if you had actual knowledge that there was a problem under the flooring. You would have got that laminate material, but had got it there and not given it to him and encouraged him to look. I'm not doubting his mother's ability to smell or not smell, but again, the plaintiff was in the home three times before the closing besides the fish delivery, and the home inspector couldn't detect anything either. I think, again, both sides have totally briefed it. I think the judge ruled totally properly. He's a great trial judge. He's ruled against me, so I don't always agree with him, but I think the standard here is that unless you can find an abuse of discretion in awarding the attorney's fees, the original judgment should stand both as to the final and the directed verdict and the final order on the attorney's fees. And I don't mean to be preachy, so I'll shut up if you have questions. Justice Kennedy, thank you, sir. Again, thank you. It's a pleasure to be here. I'm so sorry to hear of Justice Hussey. Justice Hussey was a great guy. I met him 100 years ago when I sat here, and I was the felony assistant in Kendall, and he was the felony main guy in King County, so great gentleman. Thank you. Ms. Kessler. I think most of the points that were raised by Mr. Kramer we discussed on my initial argument. I would just like to comment on one point he made on the attorney's fees issue early in his portion of the argument. He said that everyone north of I-80 and so far around Illinois uses the same residential real estate contract, and that's sort of my point, is if everybody is using a contract that awards attorney's fees to the prevailing party in a mandatory fashion, why do we have a statute that applies a discretionary standard? Because everybody then is going to be bound by the same thing. And that's really the only point I wanted to bring up. There's a reason for that clause in the contracts to kind of deter litigation. Yes. And try to force parties to settle. In this case, the trial court made some comments to me about the failure to settle on a weak case. Your Honor, I don't, it's not really on topic how the settlement happened, but we actually had a settlement conference that I think, I actually don't recall at what point in the case, but it was in the middle after there had been some discovery. And Mr. Kramer and I talked, and he indicated that he didn't think his clients would make an offer, and I didn't want to, I think both parties didn't want to waste the court's time. At least that's my recollection of how that happened. But I do, Mr. Kramer and I have talked a number of times about the fact that sometimes attorneys can settle things more easily than clients can. I think that's generally true. Anything further? No. Thank you very much. Thank you. Thank you for your arguments here today. Safe travels back. And we will take the case under consideration, enter a disposition in due course, and we are adjourned for the day.